## First Virginia Bank, a Virginia Banking Corporation v. William E. Sutherland, Jr., T/A Groveton Arco.

January 14, 1977.

Record No. 760091.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*James W. Patterson (Carol A. Sigmond; Miller, Miller, Patterson and Reese*, on brief), for plaintiff in error.

*Thomas J. Freaney, Jr.*, for defendant in error.

HARRISON, J., delivered the opinion of the court.

The issue in this case is whether the charges of William E. Sutherland, Jr., trading as Groveton Arco, for towing and storing a motor vehicle are superior in dignity, by virtue of Code §§ 46.1-2 and 46.1-3, to the express lien of First Virginia Bank,

created by Code § 46.1-73. The court below ruled that Sutherland's charges were superior, and the bank appealed.

On July 25, 1973, Warren Preston, Jr. purchased from Brown Pontiac, Inc. a Pontiac automobile on an installment contract financed by the First Virginia Bank. For some reason not fully explained in the record, the Division of Motor Vehicles did not issue a title to Preston until February 15, 1974. However, the lien of the bank, dated July 25, 1973, in the amount of $5,078.16, is reflected on the certificate of title to the vehicle and is evidenced by a security agreement.

On February 2, 1974, Preston was involved in an accident while operating his automobile. At that time the vehicle was impounded because the investigating police officer noted a discrepancy between its license plates and its registration certificate. At the request of the officer, Sutherland, in accordance with his agreement with Fairfax County, towed the vehicle to appellee's storage lot. In March, 1974, Preston defaulted in the payment of a monthly installment due on his contract. The bank, in an attempt to protect its security interest, asserted a claim to possession of the vehicle.

Sutherland testified that he sent Preston and the bank notices of his charges for the towing and storage of the automobile. One notice, dated March 20, 1974, recites that a total of $197.50 was due Sutherland. The second notice, dated May 31, 1974, recites that the amount then due was $557.50. Each purports to give Preston five days notice to contact Sutherland and advise as to his "intentions" concerning the Pontiac automobile. Preston was advised that unless he responded Sutherland would "be forced to dispose of the car as salvage and apply the proceeds to your account", and that, as a last resort Sutherland would "forward your balance to our attorneys for whatever action they might deem necessary".

The first notice was sent by certified mail, and Preston acknowledged receiving it. He denied receiving the second notice, and the bank denied receiving either notice. Michael S. Berry, an employee of the bank, testified that on or about May 7, 1974, he contacted a Mr. Caldwell, an employee of Sutherland's, and that Caldwell told him the Preston vehicle could be recovered if the bank paid Sutherland $197.50, and presented a release from the police department. Berry said that when he presented the release and the $197.50 requested, he was informed that the

storage balance was then $480. Sutherland denied that the bank ever offered to pay him any amount in excess of $75. The bank refused to pay the charge of $480 allegedly demanded by appellee and instituted the action in detinue under review to recover possession of the automobile.

Code § 46.1-2 concerns generally the removal and disposition of unattended, abandoned or immobile vehicles left outside the corporate limits of any city or town, or on an interstate highway inside such corporate limits. Code § 46.1-3 applies to such vehicles found on the public streets, public grounds or private property and gives to localities the right to adopt ordinances with provisions substantially similar to the provisions of Code § 46.1-2.

Section 16-133 of the Fairfax County Code, adopted pursuant to authority granted it by Code § 46.1-3, provides that each removal of a vehicle "shall be reported immediately to the chief of police, who shall give notice to the owner of the motor vehicle . . . as promptly as possible". Should the owner be unknown, or fail to pay the costs incidental to the removal and storage, County Code § 16-133 provides that after notice to the owner at his last known address and to the holder of any lien of record in the Division of Motor Vehicles against the vehicle, "the chief of police may, after holding the motor vehicle . . . ninety days and after due notice of sale dispose of the same at public sale and the proceeds from the sale shall be forwarded by the chief of police to the county treasurer".

County Code § 16-133 further provides, in part, that:

> "The treasurer shall pay from the proceeds of sale the cost of removal, storage, investigation as to the ownership and liens and notice of sale, and the balance of such funds shall be held by him for the owner and paid to the owner upon satisfactory proof of ownership."

Under similar circumstances, and pursuant to Code § 46.1-2, the Commissioner of Motor Vehicles, after a lapse of thirty days, is given the authority to dispose of a vehicle towed into a garage, and he is directed to pay the proceeds from any sale of such vehicle into the state treasury. This statute also makes provision for payment from the proceeds of the costs of removal, storage, investigation as to ownership, appraisement and sale.

Significantly, neither the Code sections involved here nor

§ 16-133 of the Fairfax County Code specifically provide that there shall be a lien on the vehicle, or on the proceeds from a sale thereof, for the costs incident to removal, storage and sale. And neither the State Treasurer, the Commissioner of Motor Vehicles, nor the County Treasurer is given any guidance as to the priority to be accorded the holder of a security interest when making disbursement of the proceeds of sale.

We do not regard this omission as a legislative oversight. The statutes and the county ordinance involved are designed primarily to give police officers the authority to have unattended, abandoned or immobile vehicles removed from the highways and streets of this state, and from private property under certain circumstances, without prior permission of the owners; and to assure any garageman towing and storing a vehicle at the request of an officer the legal right to recover from the owner the charges and costs incident thereto, or to subject the vehicle to the payment thereof by sale. The amount to be recovered depends upon the facts in each case, the distance a vehicle is towed, the length of time stored and the cost and effort expended in locating the owner. We must look to other sections of the Code to determine what priority is given such charges for storage and towing in instances when the vehicle is sold and the proceeds of sale must be disbursed.

Code § 46.1-73 fixes the priority of a security interest shown on the certificate of title to a motor vehicle. The section provides as follows:

"The security interests, except security interests in motor vehicles, trailers and semitrailers which are inventory held for sale and are perfected under §§ 8.9-301 to 8.9-407 (§§ 8.9-301 to 8.9-408), shown upon such certificates of title issued by the Division pursuant to applications for same shall have priority over any other liens or security interests against such motor vehicle, trailer or semitrailer, however created and recorded, except that lien of mechanics for repairs to the extent of seventy-five dollars given by § 43-33 if the requirements therefor exist, provided the mechanic furnishes the holder of any such recorded lien who may request it with an itemized sworn statement of the work done and materials supplied for which the said lien is claimed. (Code 1950, § 46-73; 1958, c. 541; 1966, c. 558.)"

Code § 43-32 gives a garageman a lien for the storage of a vehicle. However, if the vehicle stored is subject to a security instrument the lien of the garageman thereon shall be "for his just and reasonable charges for storage under this section and for alteration and repair under § 43-33 to the extent of seventy-five dollars and in addition, such keeper [a garageman] shall be entitled to a lien against the proceeds if any, remaining after the satisfaction of all prior security interests or liens, and may retain possession of such property until such charges are paid".

Code § 43-33 gives a mechanic who alters or repairs personal property at the request of the owner a lien thereon for his charges. But, if the article of personal property is subject to a security instrument, the mechanic "shall have a lien thereon for his just and reasonable charges therefor to the extent of one hundred and fifty dollars and in addition, such mechanic shall be entitled to a lien against the proceeds, if any, remaining after the satisfaction of all prior security interests or liens, and may retain possession of such property until such charges are paid".

Code § 8.9-310, a part of the Uniform Commercial Code, provides:

"**Priority of certain liens arising by operation of law.** — When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise. (1964, c. 219.)"

The Code sections quoted immediately above were involved in *Checkered Flag Motor* v. *Grulke*, 209 Va. 427, 164 S.E.2d 660 (1968). There the holder of a conditional sales contract brought an action in detinue to recover a vehicle from a garageman who claimed a lien thereon for storage charges and for repairs. We held that the garageman's lien for repairs did not have priority over the security interest shown on the certificate of title to the motor vehicle, except to the extent of the then $75.00 statutory amount for repairs. We noted the following statement in the Virginia Comment to Code § 8.9-310: "The Virginia statute giving a garageman a lien, Code 1950, § 43-32, does not contain

any provision regarding priorities, and so the UCC operates to give the garageman a priority without limitation in regard to other secured parties." We disagreed and said:

> "Code, § 43-32, giving a garageman a lien for storage, does not, as the Comment states, contain any provision regarding priorities. But Code, § 46.1-73, a part of the Motor Vehicle Code, contains specific provision with respect to the priority of a lien shown on the certificate of title to a motor vehicle, and is, in our opinion, controlling as to the priority of such a lien over a storage lien as well as, to a limited extent, a repair lien claimed against such vehicle." 209 Va. at 431, 164 S.E.2d at 663.

In *Checkered Flag* we said that the limitation found in Code § 43-33 on the lien of a mechanic for repairs where there is a security instrument on the property involved "is an effective provision fixing the priority between a lien for repairs and one of the listed encumbrances otherwise than is provided by Code § 8.9-310. Except for the $75.00 statutory amount, Code, § 43-33 places the lien for repairs in inferior position to that occupied by the encumbrance on the property". 209 Va. at 431, 164 S.E.2d at 663. We then found that the language in Code § 46.1-73, "shall have priority over any other liens", was broad enough to include storage liens and that it necessarily subordinates such latter liens to a lien shown on the certificate of title.

However, in 1970, the General Assembly amended Code § 43-32 by adding the provision heretofore quoted giving a garageman a lien for storage to the extent of $75.00 where the vehicle stored is subject to a security instrument. Acts 1970, c. 56. Consistent with *Checkered Flag*, and in view of the 1970 amendment, we hold that the lien of the bank's security agreement is entitled to priority over the claim asserted by Sutherland, except to the extent of the $75.00 statutory amount for storage.

We find no merit in the contention of appellee that the bank was an "owner" of the vehicle involved within the contemplation of Code §§ 46.1-2 and 46.1-3. "Owner" is defined in Code § 46.1-1(18) as one who holds legal title to a vehicle or one entitled to immediate possession under a conditional sales lease or agreement. In the instant case the owner of the automobile was Preston. The status of the bank was that of a

lien holder with the right upon default to exercise all the rights "of a secured party under the Uniform Commercial Code", as is provided in the security instrument.

We find no evidence of any action by Sutherland, or by anyone, to effect a sale of the Preston vehicle in the manner provided by Code §§ 46.1-2 and 46.1-3, or by § 16-33 of the Fairfax County Code. Neither do we find that any action has been taken by Sutherland to enforce any lien he may have acquired by virtue of Code § 43-32 for storage, in the manner provided by Code § 43-34 which specifically gives a garage keeper, to whom a motor vehicle has been delivered pursuant to Code §§ 46.1-2 and 46.1-3, or 46.1-3.2, the authority to take action after ninety days from the date of delivery.

Accordingly, the judgment of the lower court is reversed, and the cause is remanded for the entry of a judgment awarding the bank possession of the Pontiac automobile owned by Warren Preston, and ordering Sutherland to release the said vehicle upon receipt of the sum of $75.00 on account of storage charges due him, as provided by Code § 43-32. The appellant, having substantially prevailed, will be entitled to its costs.

*Reversed and remanded.*