**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: PAUL B. BRICE; JEWEL H.
BRICE,
Debtors.

THOMAS L. BLAIR,                                                                            No. 98-2521
Creditor-Appellant,

v.

CRESTAR BANK,
Creditor-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
James H. Michael, Jr., Senior District Judge.
(CA-98-16-H, BK-97-01062-5-RWK)

Argued: May 4, 1999

Decided: August 17, 1999

Before ERVIN, TRAXLER, and KING,
Circuit Judges.

_____

Affirmed by published opinion. Judge Ervin wrote the opinion, in
which Judge Traxler and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Joseph Michael Mott, Rockville, Maryland, for Appel-
lant. Mark Bowman Callahan, CLARK & BRADSHAW, P.C., Harri-
sonburg, Virginia, for Appellee.

**OPINION**

ERVIN, Circuit Judge:

The question before this Court is which of two competing security interests should be granted priority. Paul and Jewel Brice (the "Debtors") obtained loans from Crestar Bank ("Crestar") and Thomas L. Blair ("Blair"). As collateral, the Debtors provided both Crestar and Blair with security interests in an antique aircraft. The Debtors later filed for Chapter 11 bankruptcy.

In bankruptcy court, Crestar moved to lift the automatic stay on the aircraft so that it could foreclose its interest. In opposition, Blair argued that since Crestar had failed to file a continuation statement with the Federal Aviation Administration ("FAA") in accordance with Va. Code § 8.9-403(2) (Michie 1991), Crestar had forfeited its priority. The bankruptcy court granted Crestar's motion and the district court affirmed. Blair then appealed. Finding no error, we affirm.

I.

The Debtors owned a 1937 Lockheed Model 12A Aircraft of considerable value, which they used as collateral in a number of loans. In 1987, Maryland National Bank (later NationsBank) was the first creditor to receive a security interest in the aircraft in exchange for a loan to the Debtors.[1] Crestar became the second creditor to receive an interest in the aircraft on February 2, 1992 (the"1992 loan"). Blair became the third creditor on August 26, 1993. Crestar issued the Debtors a second loan on August 30, 1996 (the "1996 loan") in exchange for yet another security interest in the airplane. Crestar consolidated the new loan with its 1992 loan.

Although the Debtors executed an Aircraft Security Agreement and filed a financing statement with the FAA in accordance with 49 U.S.C.A. § 44107 (West 1997) reflecting the 1992 loan, they did not execute a new security agreement for the 1996 loan. Instead, Crestar

_____

[1] NationsBank (now Bank of America) did not file a response to Crestar's Motion for Relief and thereby waived its right to participate further in these proceedings.

2

continued to rely upon the security agreement for the 1992 loan. While Crestar did refile a financing statement with the State of Virginia on January 28, 1997, reflecting the 1996 loan, it did not file a new financing statement or an amendment to the 1992 statement with the FAA. The Debtors also executed an Aircraft Security Agreement and filed a financing statement with the FAA for Blair's 1993 loan.

On July 8, 1997, the Debtors filed for Chapter 11 bankruptcy. Four months later, Crestar filed a Motion for Relief from the Automatic Stay seeking to foreclose its security interest in the aircraft. In his Response, Blair argued that, because Crestar had failed to refile papers with the FAA five years after its initial security agreement as allegedly required by Va. Code § 8.9-403 (2), Crestar had forfeited its priority and Blair's interest was now superior to Crestar's.

After a hearing, the bankruptcy court granted Crestar's motion, holding that, because 49 U.S.C.A. § 44107 of the Federal Aviation Administration Act preempted Va. Code Ann. § 8.9-403(2), Crestar was not required to refile with the FAA. Blair appealed to the district court, which affirmed the bankruptcy court's ruling. See In re Brice, 225 B.R. 124, 130 (W.D. Va. 1998). He then appealed to this Court.

II.

The sole issue before this Court is a question of law. Was Crestar required under federal and Virginia law to refile with the FAA five years after the day it filed its initial security interest to maintain the priority of its security interest? We review questions of law de novo. See In re Bulldog Trucking, Inc., 147 F.3d 347, 351 (4th Cir. 1998). We conclude that Crestar was not required to refile and affirm the judgment of the district court.

Blair argued on appeal that while the perfection of a security interest in an aircraft is governed solely by federal law, the priority of a perfected security interest is governed by state law. Blair claimed that the Supreme Court articulated this perfection versus priority, federal versus state, dichotomy in Philko Aviation, Inc. v. Shacket, 462 U.S. 406, 413 (1983) ("Although state law determines priorities, all interests must be federally recorded before they can obtain whatever priority to which they are entitled under state law . . .. But recordation

3

itself merely validates; it does not grant priority.") (citation omitted).**2** Accordingly, Blair claimed that since Crestar failed to file a continuation statement five years after filing its initial financial statement as required by § 8.9-403(2) of the Virginia Code, **3** Crestar forfeited its priority status.

Crestar responded that refiling with the FAA was unnecessary. Analogizing to the filing of an automobile title with the motor vehicle administration, Crestar argued that once its interest had been properly perfected through filing with the FAA, it was not required to file anything further. Crestar argued that § 8.9-403(2) does not apply in this case because filing with the FAA is governed by 49 U.S.C.A. § 44107, a federal statute which preempts§ 8.9-403(2). See Va. Code Ann. § 8.9-302 (Michie 1991).**4** Furthermore, Crestar contended that

_____

**2** **See also** 49 U.S.C.A. § 44108(c)(1) (West 1997) ("The validity of a conveyance, lease, or instrument that may be recorded under section 44107 of this title is subject to the laws of the State . . . at which the conveyance, lease, or instrument is delivered . . . ."); Va. Code § 8.9-312(5)(a) (Michie 1991) ("Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier . . . ."); 14 C.F.R. § 49.17(c) (1999) (stating that the FAA defers back to the state regarding "[t]he validity of any instrument eligible for recording under this part . . . .").

**3** Section 8.9-403(2) reads in relevant part:

> (2) . . . [A] filed financing statement is effective for a period of
> five years from the date of filing. The effectiveness of a filed
> financing statement lapses on the expiration of the five-year
> period unless a continuation statement is filed prior to the lapse.
> If a security interest perfected by filing exists at the time insol-
> vency proceedings are commenced by or against the debtor, the
> security interest remains perfected until termination of the insol-
> vency proceedings and thereafter for a period of sixty days or
> until expiration of the five-year period, whichever occurs later.
> Upon lapse the security interest becomes unperfected. . . .

Va. Code Ann. § 8.9-403.

**4** Section 8.9-302, entitled "When filing is required to perfect security interest; security interests to which filing provisions of this title do not apply," reads in relevant part:

4

§ 44107 does not make any additional requirements beyond initial filing.

The district court sided with Crestar and so do we. We agree because under Virginia law § 8.9-403 does not apply to this case. The plain language of Va. Code Ann. § 55-100 (Michie 1995), entitled "Recordation of instruments affecting civil aircraft of the United States," renders § 8.9-403(2) inapplicable in this situation.[5]

_____

> (3) The filing of a financing statement otherwise required by this title is not necessary or effective to perfect a security interest in property subject to
>
> (a) statute or treaty of the United States which provides for a national or international registration or a national or international certificate of title or which specifies a place of filing different from that specified in this title for filing of the security interest.

\* \* \*

> (4) Compliance with a statute or treaty described in subsection (3) of this section is equivalent to the filing of a financing statement under this title, and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith. . . . Duration and renewal of perfection of a security interest perfected by compliance with the statute or treaty are governed by the provisions of the statute or treaty; in other respects the security interest is subject to this title.

Va. Code Ann. § 8.9-302(3), (4).

[5] Section 55-100 reads in relevant part:

> No instrument which affects the title to or interest in any civil aircraft of the United States, as defined by federal law, . . . , shall be valid . . . until such instrument is recorded in the office of the Civil Aeronautic[s] Administrator of the United States, or such other office as is designated by the laws of the United States as the one in which such instruments should be filed. Every such instrument so recorded in such office shall be valid as to all persons without further recordation in any office in this Commonwealth, the provisions of any other recordation statute to the contrary notwithstanding . . . .

Va. Code Ann. § 55-100 (emphasis added). Although neither side discussed § 55-100 on appeal, we believe that its plain language is unambiguous and dispositive here.

5

Section 55-100 refers to "civil aircraft of the United States" as "defined by federal law." § 55-100. Federal law defines a "civil aircraft of the United States" as "an aircraft registered under chapter 441 of this title," 49 U.S.C.A. § 40102(17) (West 1997). Since an aircraft registered under chapter 441 of title 49 must be registered with the FAA in accordance with § 44107, see 49 U.S.C.A. § 44107(a),[6] and since it is undisputed that the contested aircraft was registered with the FAA in accordance with § 44107, the contested aircraft is a "civil aircraft of the United States." Since this aircraft is a "civil aircraft of the United States," § 55-100 applies here, not § 8.9-403(2).

Section 55-100 further states that any financial instrument filed with the FAA "shall be valid as to all persons without further recordation in any office in this Commonwealth, the provisions of any other recordation statute to the contrary notwithstanding." § 55-100. We interpret this provision to state that when the security interest concerns an aircraft registered with the FAA, § 8.9-403 does not apply, and no further recordation is required beyond the initial filing with the FAA.[7] Crestar's initial filing with the FAA, therefore, was sufficient to preserve its priority security interest.

_____

[6] Section 44107(a)of Title 49, Chapter 441, states in relevant part:

> (a) **Establishment of system**. The Administrator of the Federal Aviation Administration shall establish a system for recording--
>
> (1) conveyances that affect an interest in civil aircraft of the United States[.]

49 U.S.C.A. § 44107(a) (emphasis added).

[7] Although we have been unable to locate any published opinion interpreting this provision or any legislative history documenting its adoption, the Virginia Comment to § 8.9-302 states that 8.9-302(3)(a) "excludes from the operation of the title [(Title 8.9)] . . . § 55-100, providing for national recordation of instruments affecting title to civil aircraft." Since § 8.9-403(2) is part of Title 8.9, this Comment supports our conclusion that § 8.9-403(2) does not apply to aircraft governed by § 55-100. While the legal weight of this Comment may be disputed, the Virginia Supreme Court has cited the Virginia Comment as legal authority when interpreting Title 8.9. See Kayhoe Constr. Corp. v. United Virginia Bank, 257 S.E.2d 837, 840 (Va. 1979) (interpreting § 8.9-310). Since we rely solely on Virginia law to resolve this case, we do not address the issue of whether 49 U.S.C.A. § 44107 preempts state law.

6

III.

Finding no error, we affirm the judgment of the district court for the reasons set forth above.

AFFIRMED

7