## CIRCUIT COURT OF THE CITY OF NORFOLK

Gold Key Aviation, L.L.C.

v.

International Jet Charter, Inc.

September 19, 2001

Case No. (Chancery) CH 01-1143

BY JUDGE JOHN C. MORRISON, JR.

This matter comes before the Court on Petitioner Gold Key Aviation's (hereinafter "Gold Key") Petition to Determine the Validity of Lien.

On March 17, 1999, Gold Key, through its predecessor, entered into an Aircraft Charter and Services Agreement with International Jet Charter, Inc. (hereinafter "IJC"). Pursuant to the Agreement, Gold Key placed its aircraft into charter service with IJC. IJC "managed and chartered" the aircraft and, as a result, provided the Gold Key aircraft with pilots, maintenance, fueling, labor, and a hangar.

On March 16, 2001, Gold Key terminated the Agreement with IJC and on April 20, 2001, retook possession of the aircraft. On June 11, 2001, IJC filed a notice of lien "for $75,331.32 for fuel, services, and labor" provided to the aircraft before the Agreement was terminated with Gold Key, as the aircraft owner, and with Pullman Bank, as holder of a security interest in the aircraft.

Subsequently, Gold Key filed a "Notice of Hearing and Petition to Determine Validity of Lien" with this Court, arguing that the lien filed by IJC is invalid because (1) IJC was not a "keeper" of the aircraft, and (2) Virginia Code § 43-32 requires possession to assert a valid lien upon an aircraft. Gold Key requested that this Court find that the lien filed by IJC against the aircraft is void.

IJC responded asserting that (1) IJC was a "keeper" of the aircraft based upon the plain meaning of the word, and (2) Code § 43-32 does not require possession to assert a lien. IJC requested that this Court hold that the lien is valid as executed.

The instant action contains several issues that this Court must address: (1) whether IJC qualifies as a keeper of a hangar or tie down; (2) whether or not Code § 43-32 requires a potential lienor to remain in possession in order to assert a lien for the keeping, care, and support of an aircraft, and (3) whether Code § 43-34.1 requires that IJC file a notice of claim with the State Corporation Commission in order to have a valid and perfected lien for storage, alteration, or repairs made to Gold Key's aircraft.

### I. IJC was a "Keeper" of Gold Key's Aircraft

A. Every keeper of a . . . hangar, tie-down . . . and every person . . . keeping . . . aircraft, shall have a lien upon such . . . aircraft, for the amount which may be due him for the keeping, supporting, and care thereof, until such amount is paid.

B. In the case of any . . . aircraft . . . subject to a chattel mortgage, security agreement, deed of trust, or other instrument securing money, the keeper of the . . . hangar, tie-down . . . shall have a lien thereon for his reasonable charges for storage under this section not to exceed $300 and for alteration and repair under § 43-33 not to exceed $625. . . .

D. In addition, any keeper shall be entitled to a lien against any proceeds remaining after the satisfaction of all prior security interests or liens, and may retain possession of such property until such charges are paid.

Va. Code Ann. § 43-32 (2001).

There is dissention between the parties as to whether the instant lien falls under Va. Code § 43-32 or § 43.34-1. Under either Code section however, what "keeper" means and whether IJC was a "keeper" of Gold Key's aircraft is relevant.

Contrary to Gold Key's argument, it does not appear that the Virginia Supreme Court ever definitively defined "keeper." In *First Virginia v. Sutherland*, 217 Va. 588, 231 S.E.2d 706 (1977), the issue was whether the lien of a garage that towed and stored an automobile was superior to the express lien of the bank which financed the automobile. *Id.* at 588-89. In *First Virginia*, the court denoted "garageman" next to the word "keeper" in its

recitation of the statutory language of § 43-32. *Id.* It is argued that this determines the boundaries of the word "keeper." After undertaking a careful review of the content and context in which *First Virginia* was decided, it does not appear that the court intended to unconditionally establish the definitional parameters of the word.

"Ordinary words in a statute must be given the usual, ordinary, and common meaning unless a different intent is somehow manifest." *Tallbott v. Southern Seminary, Inc.*, 131 Va. 572, 578, 109 S.E. 440, 441 (1921). *Black's Law Dictionary* defines a "keeper" as "[a] custodian, manager, or superintendent; one who has the care, custody, or management of any thing or place; one who has or holds possession of anything." 5th ed. (1979).

In other Code sections, such as § 18.2-189 and § 18.2-188, the Virginia Legislature saw fit to distinguish between an "owner" and a "keeper." Virginia Code Ann. (2001). This type of usage shows this Court that the Legislature did not intend to definitely equate an "owner" to a "keeper." Additionally, while it is correct that the Virginia Supreme Court decided cases where the owner of an establishment was considered its "keeper," there is nothing in the language of those cases which shows that the Court intended "owner" to be the wholly inclusive definition of a "keeper." *See e.g., O'Malley v. Rapidan River Farm*, 24 B.R. 900, 903 (Bankr. E.D. Va. 1982); *Epperley v. Woodyard*, 4 B.R. 124, 126 (Bankr. W.D. Va. 1980).

In the case at bar, the hangar space where Gold Key's aircraft was kept was leased to IJC by Piedmont Hawthorne for the use of any appropriately sized aircraft. Bingham Letter, July 17, 2001. IJC was a tenant/lessee of the space and was responsible for providing payment to Piedmont Hawthorne for services provided to the aircraft IJC managed. IJC arranged for and provided hangar space for Gold Key's aircraft, coordinated and provided services necessary to maintain and legally operate Gold Key's aircraft, and, as a lessee, was accountable for all activities that occurred in the hangar and/or tie-down space.

The language contained in the Agreement entered into between IJC and Gold Key clearly denotes that the parties to this agreement intended IJC to be the "keeper" of Gold Key's aircraft. The specific language of the Agreement[1]

---

[1] "In consideration of the mutual promises . . . Owner places the following aircraft into the Air Charter Fleet of IJC, to be *exclusively managed by IJC and to be exclusively chartered and operated by IJC. . . .*" Aircraft Air Charter and Services Agreement, p. 1, § 1.1. "Owner places Aircraft into IJC's care, custody and control. . . ." *Id.* at p. 2, § 3.1. "For IJC's ongoing management of the Aircraft and the coordination of maintenance and services for the Aircraft. . . ." *Id.* at p. 8, § 7.5.

shows that IJC falls squarely within the plain definitional meaning of a "keeper." *Black's, supra.*

Based upon the common meaning of the word "keeper," IJC's status as a lessee of the hangar space in which the aircraft was kept, the intentions of the parties as evidenced by the Agreement, and the services provided to Gold Key by IJC, this Court finds that IJC was a "keeper . . . of a hangar, tie-down" and a "person . . . keeping . . . aircraft" within the meaning of Va. Code Ann. §§ 43-32 and 43-34.1 (2001).

## II. *Virginia Code § 43-32 Does Not Require Possession in Order to Assert a Lien*

The second argument advanced in opposition to the lien filed by IJC is that in order to assert the lien authorized by § 43-32, the potential lienor must remain in possession of the aircraft. The statutory language clearly states that a keeper of a hangar, tie-down, or aircraft, is entitled to assert a lien against the aircraft for amounts due resulting from the "keeping, supporting, and care thereof, until such amount is paid." Virginia Code Ann. § 43-32(A) (2001). Nothing within the Code section states that a lienor must maintain possession of the property in order to assert a lien upon it. In fact, subsections of the statute state that remaining in possession of the property is merely an option for the potential lienor. Va. Code Ann. § 43-32(D) (2001).

Case law presented to the Court does contains language stating that "[t]he foregoing sections give an undisputed possessory lien to the benefited party. . . ." *Epperley,* 4 B.R. at 126. However, the Virginia Supreme Court never was required to decide whether the statute creates a possessory lien. Each of the cases Gold Key relies upon to advance their position that the statute creates a possessory lien, deal with factual situations in which the lienor retained possession of the property and the debtor filed suit for the return of the property. *See, e.g. Epperley,* 4 B.R. at 125; *O'Malley,* 24 B.R. at 901-02; *Checkered Flag Motor v. Grulke,* 209 Va. 427, 164 S.E.2d 660 (1968); *First Virginia,* 217 Va. at 706. These cases are not on point with the instant factual situation.

Where the pertinent statutory language provides that the keeper of an aircraft "may retain possession," not must or shall retain possession, this Court finds that nothing in case law nor the statute requires possession as a prerequisite to asserting a lien upon the property. IJC's lien is also not limited

---

"IJC will provide the following additional services. . . . Hangaring and storage of the Aircraft. . . ." *Id.* at 8-9, § 7.7-7.7.1.

in the amount of its lien by § 43-32(B), as suggested by Gold Key. A careful reading of the statute shows that § 43-32(A) does not limit the dollar amount of a keeper's lien for the support, keeping, and care of an aircraft; and § 43-32(B) simply establishes the priority of a secured creditor over the lienor and limits a storage lien to $300 for property subject to a chattel mortgage or other security interest. Va. Code Ann. (2001).

IJC's lien is valid and perfected, and IJC is entitled to enforce their lien against Gold Key's aircraft under § 43-32(A) for amounts related to the "keeping, supporting, and care" thereof.

### III. *Virginia Code § 55-100 Modifies § 43-34.1*

Virginia Code § 43-34.1 entitles the keeper of a hangar or tie-down to assert a non-possessory lien against an aircraft subject to a chattel mortgage or other instrument for any storage, alteration, or repair, if three requirements are met:

> 1. The claim of lien shall be signed, under oath, by the claimant, his agent, or attorney;
> 2. The claim of lien shall also be filed within 120 days after completion of alterations or repair or accrual of storage charges, as personal property security interests or liens are recorded, with the State Corporation Commission in accordance with the applicable provisions of part 5 (§ 8.9A-501 *et seq.*) of Title 8.9A; and
> 3. The claim of lien shall also be filed within such 120-day period with the Aircraft Registration Branch of the Federal Aviation Administration.

Va. Code Ann. § 43-34.1 (2001).

A rigid reading of the aforementioned statute reveals that acquiring a nonpossessory lien upon an aircraft that is subject to a chattel mortgage or other similar instrument requires that the keeper sign a claim of lien and then file the claim with the State Corporation Commission and Federal Aviation Administration within 120 days of completion of work on the aircraft. *Id.* However, Virginia Code § 55-100 modifies § 43-34.1 by negating the need for filing notice of the claim by the lienor with the State Corporation Commission. Specifically, § 55-100 reads, in part: "Every such instrument so recorded in such office [Office of the Civil Aeronautic Administrator] shall be valid as to all persons *without further recordation in any office of this Commonwealth,*

*the provisions of any other recordation statute to the contrary notwithstanding.*" Va. Code Ann. § 55-100 (2001) (emphasis added).

In *Brice v. Crestar Bank,* the United States Court of Appeals for the Fourth Circuit decided that compliance with § 55-100 rendered the requirements of § 8.9-403, a Virginia finance statement filing statute, unnecessary. *Brice v. Crestar Bank,* 188 F.3d 576 (4th Cir. 1999). The Court held that § 55-100 trumped the requirements of § 8.9-403 because the unambiguous language of § 55-100 provides that when "the security interest concerns an aircraft registered with the FAA, § 8.9-403 does not apply, and no further recordation is required beyond the initial filing with the FAA." *Id.*

Where § 55-100 modifies a similar Code provision, this Court finds that § 55-100 correspondingly modifies § 43-34.1. As such, recordation of a claim with the State Corporation Commission upon an aircraft subject to a chattel mortgage is unnecessary, as long as the claim was filed in accordance with the other provisions of § 43-34.1 and § 55-100.

Therefore, where IJC asserted and provided proof to this Court that the claim was filed in accordance with § 43-34.1, as modified by § 55-100, IJC's nonpossessory lien for the "usual and reasonable charges for storage, alteration, or repair" performed by IJC upon the aircraft, is valid, perfected, and enforceable.