# COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Ortiz

MARVIN PATRICK BRYSON

v.     Record No. 0721-21-3

GRAYSON COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
JANUARY 18, 2022

FROM THE CIRCUIT COURT OF GRAYSON COUNTY
H. Lee Harrell, Judge

(Kimberly L. Osborne; Loftin & Osborne, on brief), for appellant.
Appellant submitting on brief.

(Michael R. Bedsaul; Mary Foil Russell; Joey D. Haynes, Guardian
*ad litem* for the minor child; Sands Anderson PC; The Jackson Law
Group, on brief), for appellee. Appellee and Guardian *ad litem*
submitting on brief.

Marvin Patrick Bryson (father) appeals the circuit court's orders terminating his parental

rights and approving the foster care goal of adoption. Father argues that the circuit court erred in

finding that the evidence was sufficient to support a termination of his parental rights under Code

§ 16.1-283(C)(1) and (C)(2). Upon reviewing the record and briefs of the parties, we conclude

that the circuit court did not err. Accordingly, we affirm the decision of the circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)).

Father and Amanda Ayers (mother) are the biological parents to the child who is the subject of this appeal.[2]  Father and mother have had an "on-again-off-again relationship" for years.  The child first came into foster care with the Carroll County Department of Social Services (Carroll DSS) in May of 2016 due to a case involving abuse and neglect.  The child was two years old at the time of the initial removal.

After being in foster care for nineteen months, the child was returned to mother's custody. In February 2018, Carroll DSS received a new complaint concerning physical abuse and opened an ongoing services case on the family.  The Grayson County Department of Social Services (the Department) took over the case once the family moved from Carroll County to Grayson County in May of 2018.

The Department provided ongoing services until it removed the child from mother's custody on June 19, 2018.  At the subsequent adjudicatory hearing, the Juvenile and Domestic Relations District Court of Grayson County (JDR court) found that the child had been abused and neglected.

---

[1] The record in this case was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Mother has another child who has a different biological father.  Our discussion is limited to the child who is the subject of this appeal.

This finding "was to the mother only." Thereafter, the JDR court held its dispositional hearing and approved an initial foster plan for the child "with the goal of return home / relative placement." The Department provided numerous services to father, including referrals for psychological, parenting, and substance abuse assessments, as well as visitation and case management services.

Due to father's "lack of progress," however, the Department sought to change the foster care goal to adoption and petitioned to terminate father's parental rights. The JDR court approved the foster care plan with the goal of adoption and terminated father's parental rights. In accordance with the same, the JDR court entered a permanency planning order as well as an order for involuntary termination of residual parental rights, on June 16, 2020.[3] Father appealed the JDR court's decision to the circuit court.[4]

The Department presented evidence about the events that led to the child's June 19, 2018 removal. At the time, the child's home conditions were "unstable," and the child had issues with truancy and hygiene. In addition, mother was unresponsive to the Department and failed to attend family partnership meetings. Mother also allowed the child's Medicaid to lapse and violated a "safety plan" concerning the child.[5] Father "remained largely uninvolved with the care of the child and had not taken any steps to change the child's circumstances."

The Department also presented evidence regarding the child's placement in foster care. The child attended counseling to address "PTSD and attachment issues." In addition, the child

---

[3] The JDR court also terminated mother's parental rights to the child. Mother appealed the matter to the circuit court, and the circuit court also terminated mother's parental rights. Mother did not appeal the circuit court's ruling.

[4] The record does not include a transcript from the circuit court hearing; however, it does include a written statement of facts in lieu of a transcript.

[5] The safety plan stated that mother needed to "maintain the home and keep it clean, ensure [that the child's sibling] gets to school every day and on time, and there is to be no physical punishment." Mother was also directed to refrain from drug use.

participated in physical therapy and occupational therapy. At the time of the circuit court hearing, the child was excelling in school and was involved in extra-curricular activities. The child's foster family considered the child "part of the[] family" and was "committed to pursuing the child's adoption."

The Department also presented evidence of the services it provided to father and his lack of compliance. The Department directed father to remain drug and alcohol free, maintain safe and stable housing, and stay in consistent contact with the Department. Father's level of contact with the Department was "fairly non-existent." The Department was unable to investigate father's home situation or employment status. In addition, father did not participate in the required psychological, parenting, or substance abuse assessments. Nor did father complete individual counseling, family counseling, or services addressing employability. He did not attend meetings with the Department to discuss the child's placement and only attended four of the twenty-five scheduled visitations with the child. The Department suspended visitation due to father's absences and the effects they were having on the child. Father made no effort to request that visitation be resumed. Father tested positive for drugs, including marijuana, oxycodone, amphetamine, and methamphetamine, on five separate occasions in 2019.

Furthermore, the Department informed the circuit court of its efforts to investigate relatives as possible placements for the child. The child's maternal aunt and her husband had petitioned for custody of the child; however, the JDR court dismissed their petition, and they did not appeal. Father's niece and sister also expressed interest in the child at one point. The Department advised them that they could file custody petitions; however, no such petitions were ever filed.

The Department also presented expert testimony from a licensed clinical social worker, who provided counseling services to the child. The counselor opined that it would be "detrimental" to place the child in her parents' home because "the child exhibited a trauma bond with [mother] and

[father]; and . . . the child did not recognize [mother] or [father] as her parents and caretakers." The social worker opined that the child was "doing well" in her foster care placement. Father did not present evidence in the circuit court.

At the conclusion of the evidence in the circuit court, the Department requested that the circuit court approve the foster care goal of adoption for the child and involuntarily terminate father's parental rights under Code § 16.1-283(C)(1) and (C)(2). The child's guardian *ad litem* also recommended termination of father's parental rights and approval of the foster care goal of adoption. Father argued that the evidence was insufficient to involuntarily terminate his parental rights.

After hearing the evidence and arguments, the circuit court found that there was clear and convincing evidence to involuntarily terminate father's residual parental rights under Code § 16.1-283(C)(1) and (C)(2). This appeal followed.

ANALYSIS

Father challenges the circuit court's termination of his parental rights under Code § 16.1-283(C)(1) and (C)(2). Specifically, father maintains that the trial court erred in terminating his parental rights because the Department failed to demonstrate by clear and convincing evidence that termination of his parental rights was in the best interests of the child. Father also argues that he was not responsible for the removal of the child and that the Department failed to present sufficient evidence to show that his actions caused the continuation of the child's foster care placement. Further, father argues that the Department failed to demonstrate it "made sufficient attempts to maintain contact with [father]." Lastly, father argues that the Department did not exhaust alternative, less drastic remedies, such as relative placement.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best

interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here the court hears the evidence *ore tenus*, its finding[s are] entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support [them]." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Under Code § 16.1-283(C)(2), one of the bases for the circuit court's order terminating father's parental rights, a court is authorized to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi*, 69 Va. App. at 552 (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

The Department presented evidence that father did not comply with the required services. Father did not cooperate with the Department's efforts to investigate his housing situation or employment status. Moreover, father failed to participate in psychological counseling, family counseling, employability services, and substance abuse assessments, as required by the child's foster care plan. He did not attend meetings with the Department to discuss the child's placement. The Department was even forced to suspend visitation because father only attended four of the twenty-five scheduled visitations with the child. Father made no effort to resume visitation. Father also did not remain sober; he tested positive for methamphetamines, amphetamines, oxycodone, and

marijuana on numerous occasions throughout 2019. The circuit court considered this undisputed evidence and the "substantial testimony" regarding the Department's efforts over the thirty-four-month foster care period and found that, despite those efforts, father did not complete the services or make substantial progress as required by the foster care plan.

Father also argues, in part, that the Department failed to demonstrate by clear and convincing evidence that termination of his parental rights was in the best interests of the child. At the time of the circuit court hearing, the child had been in foster care with the Department for approximately thirty-four months.[6] Despite all the services offered to father, he still was not in a position to care for the child. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

The circuit court reasoned that much of the evidence in the record focused on the child's struggles due to the abuse or neglect she suffered and that "although progress has been slow, the [child] continue[d] to make progress in foster care." The Department presented expert testimony from the child's counselor who opined that it would be "detrimental" to return the child to either biological parent because "the child exhibited a trauma bond with [mother] and [father]; and . . . the child did not recognize [them] as her parents and caretakers." With the support of the foster family, the child was "doing well in school and was involved in extra-curricular activities, including ballet, gymnastics and tee-ball." The foster family considered the child "part of the[] family" and demonstrated a commitment to the child. Based on this evidence, we find that the circuit court did not err in finding that it was in the child's best interests to terminate father's parental rights.

---

[6] The child previously spent nineteen months in foster care with Carroll DSS.

Father also argues on appeal that the Department did not exhaust alternative, less drastic remedies, such as relative placement with his sister and niece. We find that this argument is procedurally barred for failure to comply with Rules 5A:18 and 5A:20.

Rule 5A:18 states that no trial court ruling "will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18 requires a litigant "to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)). "In order to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'" *McDuffie v. Commonwealth*, 49 Va. App. 170, 177 (2006) (quoting *Marlowe v. Commonwealth*, 2 Va. App. 619, 621 (1986)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Id*.

At the conclusion of the evidence in the trial court, father noted one broad objection that "the evidence was insufficient to terminate appellant's parental rights." Father's objection failed to articulate any argument that the Department did not exhaust alternative, less drastic remedies, such as relative placement. Therefore, we find that the issue of relative placement was not preserved with the requisite specificity at the trial court level, in violation of Rule 5A:18.

Further, father's opening brief fails to include any legal authority in support of the assertion that the Department failed to exhaust alternative, less drastic remedies, such as relative

placement. Rule 5A:20(e) requires that an appellant's opening brief contain "[t]he principles of law, the argument, and the authorities relating to each question presented." Unsupported assertions of error "do not merit appellate consideration." *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992). Father's opening brief simply contends that "there are relatives, [father's] sister and niece, that the Department did not investigate as to whether or not they were possible suitable placements. Even though they came forward late in process, the Department should have investigated them as relative placement is a preferred option to termination of parental rights." Father fails to cite relevant statutory authority or case law in support of this contention.

As we stated in *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008), "[a]ppellate courts are not unlit rooms where [litigants] may wander blindly about, hoping to stumble upon a reversible error. If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention." To ignore Rule 5A:20(e) by addressing this issue on the merits "would require this court to be an advocate for, as well as the judge of the correctness of, [appellant's] position on the issues he raises." *Jones v. Commonwealth*, 51 Va. App. 730, 734-35 (2008). This Court will not advocate on the father's behalf "to ferret-out for ourselves the validity of" father's assertion regarding relative placement. *Fitzgerald v. Bass*, 6 Va. App. 38, 56 n.7 (1988) (*en banc*); *see also Buchanan*, 14 Va. App. at 56 ("We will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief.").

"When a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented [now assignment of error] as waived.'" *Parks v. Parks*, 52 Va. App. 663, 664 (2008) (first alteration in original) (quoting *Jay v. Commonwealth*, 275 Va. 510, 520 (2008)); *see also Budnick v. Budnick*, 42 Va. App. 823, 834 (2004) ("Having presented no citations or authority in his brief in support of these questions,

husband has waived these questions on appeal and we need not address them."). We find that father's non-compliance with Rule 5A:20(e) as it relates to the issue of relative placement is significant, and therefore we will not address the merits of that portion of father's argument.

Considering the totality of the evidence and the issues preserved and briefed on appeal, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2) and finding that termination was in the child's best interests.

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo*, 68 Va. App. at 574 n.9; *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). We find that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2); therefore, we do not need to reach the question of whether father's parental rights also should have been terminated under Code § 16.1-283(C)(1).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed.*