COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Haley
Argued at Chesapeake, Virginia


ARMEL SHURON McDUFFIE

OPINION BY
v.        Record No. 0995-05-1          JUDGE JAMES W. HALEY, JR.
                                        DECEMBER 19, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

Joseph R. Winston, Special Appellate Counsel (Virginia Indigent
Defense Commission, on brief), for appellant.

Joshua M. Didlake, Assistant Attorney General (Robert F.
McDonnell, Attorney General; Denise C. Anderson, Assistant
Attorney General, on brief), for appellee.


Code § 18.2-137 prohibits the destruction of, *inter alia,* a motor vehicle "not his own" by

an individual.[1]  Code § 18.2-102 prohibits the unauthorized use of, *inter alia,* a motor vehicle

"not his own, without the consent of the owner" by an individual.[2]  Armel S. McDuffie

("appellant") maintains his conviction under both statutes is error, because, since he had a

"marital interest" in the property of the motor vehicle titled in his wife's name, pursuant to the

---

[1] "If any person unlawfully destroys, defaces, damages or removes without the intent to
steal any property, real or personal, not his own . . . he shall be guilty of a Class 3 misdemeanor."
Code § 18.2-137(A).

[2]        Any person who shall take, drive or use any animal, aircraft,
           vehicle, boat or vessel, not his own, without the consent of the
           owner thereof and in the absence of the owner, and with intent
           temporarily to deprive the owner thereof of his possession thereof,
           without intent to steal the same, shall be guilty of a Class 6 felony.

Code § 18.2-102.

equitable distribution provisions of Code § 20-107.3, that vehicle cannot as a matter of law be characterized as "not his own." We disagree.

Appellant further challenges the sufficiency of the evidence to show he acted intentionally and to show the value of the vehicle destroyed. We find these contentions waived pursuant to Rule 5A:18 and not amenable to the "ends of justice" exception to that Rule.

Factual Background

On December 5, 2004, appellant and his wife, Keesha McDuffie ("wife"), had been married for approximately one and one-half years. The uncontested testimony shows that appellant subjected wife to extended mental abuse that morning, and despite prior refusals to do so, finally left and went to a neighbor's home. Several hours later he returned, demanding keys to the Land Rover, the vehicle he usually drove. Wife refused to give appellant the keys to the Land Rover.[3] Thereafter, wife had locked herself in a bedroom closet with her purse and cell phone. Appellant broke down the bedroom door, forced his way into the closet, assaulted and battered wife, broke her cell phone, by force grabbed her purse, removed from the purse the keys to the Acura and, using them, drove off in that car. Wife usually drove the Acura, but acknowledged that appellant "drove it sometimes."

Wife called the police, went to the police station, and returned home. During the afternoon appellant called several times, distraught and threatening suicide, and wanted to exchange the Acura for the Land Rover, a request that was refused. Wife's mother, Margarite Smith, her aunt, Maggie Mitchell, and a friend, Jonathan Green, had arrived at the home. These three were standing on the front porch. They saw appellant in the Acura, on the street, four or five houses away. Appellant "revved up" the engine, accelerated to 55 to 60 miles per hour, jumped a curb, went airborne, drove

_____

[3] There is no evidence as to how the Land Rover was titled. The only evidence concerning the same came from wife: "Q. Whose car was the Land Rover? A. Well, it was the one that he used . . . ."

- 2 -

through the yards of the adjoining houses, hit Ms. Mitchell's Camry, which was parked in their driveway, and finally crashed into the front porch. As Margarite Smith testified, "We all kind of jumped at the same time to get out of the way." Ms. Mitchell testified her car was "totaled" and at the time of its destruction she owed "over $3,000" on it. The Commonwealth also offered into evidence three photographs documenting significant damage to the Camry.

Appellant had income from the United States Navy, a portion of which by allotment was paid into an account in wife's name that was used to pay household bills. Wife also had income that was placed into the same account. Wife testified that she purchased the Acura "right after" the parties were married, it cost $28,500, and was titled in her name alone. Appellant drove the Acura "sometimes," but mainly used the Land Rover. Payments were made on the Acura from the account to which both appellant and wife contributed. Appellant did not testify.

At the time of the incident, there is no evidence appellant and wife were separated, were not living together, or that divorce proceedings had been initiated.

Appellant was indicted for three counts of attempted murder, two counts of felony destruction of property (Ms. Mitchell's Camry and the Acura), one count of unauthorized use of the Acura, and one count of assault and battery on wife.

Analysis

A.  Property "not his own"

The premise of appellant's defense to the charges involving his wife's car is that he had a vested property interest in the Acura, pursuant to Code § 20-107.3, at the time he took and subsequently destroyed the same and that accordingly, the car cannot be, in some proportion, "not his own" as set forth in Code §§ 18.2-102 and 18.2-137. That premise is without foundation.

The owner of an automobile is the party who has legal title to it. See Code § 46.2-100; First Va. Bank v. Sutherland, 217 Va. 588, 593, 231 S.E.2d 706, 709 (1977) (decided under predecessor

to Code § 46.2-100); Hall, Inc. v. Empire Fire & Marine Ins. Co., 248 Va. 307, 309, 448 S.E.2d 633, 635 (1994). A certificate of title serves not only as a substitute recording system but also as evidence of ownership. See Travelers Indem. Co. v. Nationwide Mut. Ins. Co., 227 F. Supp. 958, 963 (W.D. Va. 1964); Bolden v. Commonwealth, 28 Va. App. 488, 492-93, 507 S.E.2d 84, 86 (1998).

It is well established, pursuant to the Married Women's Act first codified in 1877, that "marriage [does not] give[] a husband any legal interest in his wife's tangible personal property." Stewart v. Commonwealth, 219 Va. 887, 889, 252 S.E.2d 329, 331 (1979). Thus, a husband "may be prosecuted as any other thief for the larceny of [his wife's] property." Id. at 891, 252 S.E.2d at 332. If a husband may be guilty of larceny of his wife's car, which requires proof that the car "belong[ed] to another," Jones v. Commonwealth, 3 Va. App. 295, 300, 349 S.E.2d 414, 418 (1986), and, thus, was "not his own," it follows that the car belonging to his wife also was "not his own" for purposes of prosecution for unauthorized use in violation of Code § 18.2-102 and for destruction of property in violation of Code § 18.2-137.

Contrary to appellant's argument, Virginia's equitable distribution statutes do not change the result under the facts of this case. First, to the extent they give a court the authority to classify, value, and divide the separate, marital, and hybrid property of the spouses, the law is also clear that "no decree of equitable distribution can be made *before* the parties are divorced." Parra v. Parra, 1 Va. App. 118, 124, 336 S.E.2d 157, 160 (1985). Although

> community property system[s] . . . treat[] marital property rights as vested legal title interests acquired during the marriage[,] . . . in equitable distribution systems, marital property rights are initially unvested. If the marriage ends in death rather than divorce, [for example,] the marital property rights never vest and distribution is made under the law of decedent's estates.

1 Brett R. Turner, Equitable Distribution of Property § 2:7 (3d ed. 2005). Under Virginia law, then, any interest a spouse may have in marital property is an inchoate right that becomes vested

only upon entry of a decree of equitable distribution in a divorce proceeding.  Because no divorce proceeding was pending and, thus, no decree of equitable distribution had been entered with respect to the relative property interests of appellant and wife, appellant had only an inchoate and unvested interest, if any, in wife's automobile.

For the foregoing reasons, we hold the Acura was property "not [appellant's] own" for purposes of Code §§ 18.2-102 and 18.2-137 and, thus, that appellant's first assignment of error is without merit.

### B.  Other Assignments of Error

As noted above, appellant hit Mitchell's Camry, parked in the driveway, before he rammed into the side of the house.  Appellant maintains the evidence was insufficient to prove he intentionally damaged the Camry and that its value or the damage to it was more than $1,000.  Both the intent and amount render the crime a felony, rather than a misdemeanor.  On brief, appellant concedes both issues were "not addressed to the trial court" but argues that this Court should address them under the "ends of justice" exception to Rule 5A:18.  We find neither issue appropriate to apply that exception.

Rule 5A:18 states, "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ."  In order to preserve an issue for appeal, "an objection must be timely made and the grounds stated with specificity."  Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986).  The prevailing purpose behind this rule is "to enable the trial court to prevent error, to cure alleged error with prompt and decisive instruction, and to prevent compounding any harmful consequences by dwelling on irrelevant matters."  Harward v. Commonwealth, 5 Va. App. 468, 473-74, 364 S.E.2d 511, 513 (1988).

Rule 5A:18 also provides, however, that issues not preserved may still be considered on appeal where "good cause [is] shown or to enable the Court of Appeals to attain the ends of justice." This "ends of justice" exception may be invoked only where a "miscarriage of justice" would otherwise result. See Redman v. Commonwealth, 25 Va. App. 215, 221-22, 487 S.E.2d 269, 273 (1997). As we explained in Redman:

> In order to invoke the ends of justice exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth failed to prove an element or elements of the offense. Otherwise, we would be required under the ends of justice exception to address the merits of every case where a defendant has failed to move to strike the Commonwealth's evidence as being insufficient to prove an element of the offense. Such a rule would obviate the requirement for making an adequate motion to strike or a contemporaneous objection that the evidence was insufficient.

Id. at 221, 487 S.E.2d at 272. Therefore, "it is a rare case in which, rather than invoke [Rule 5A:18], we rely upon the exception and consider an assignment of error not preserved at trial . . . ." Jimenez v. Commonwealth, 241 Va. 244, 249, 402 S.E.2d 678, 680 (1991).

Moreover, the mere possibility of a miscarriage of justice is insufficient grounds to invoke the ends of justice exception. Mounce v. Commonwealth 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). "[T]he 'ends of justice' provision may be used when the record affirmatively shows that a miscarriage of justice has occurred, not when it merely shows that a miscarriage *might* have occurred." Id. To evaluate the evidence for a miscarriage of justice, we must determine whether an error occurred that involved "substantial rights" and "clearly had an effect upon the outcome of the case." Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989).

On the issue of appellant's intent to damage the Camry, the Commonwealth offered evidence that, after he assaulted and battered wife and took the keys by force, appellant "revved up" his engine on the street outside the house. He then circled the block. Appellant returned moments later to reach a speed of 55 or 60 miles per hour, hopped the curb in front of the house, and became

airborne before crashing into the parked Camry. The force moved the Camry several feet and "spun it totally around."

The Commonwealth's evidence of appellant's conduct on December 5, 2004, is sufficient to show he acted with intent to support a conviction under Code § 18.2-137(B). Moreover, the record contains no evidence affirmatively rebutting this intent. Thus, the record fails to show a miscarriage of justice.

On the issue of the Camry's value, to support a felony conviction the statute requires that the value of or damage to the property equals $1,000 or more. See Code § 18.2-137(B)(ii). Mitchell testified that she owned the Camry and owed "over $3,000" on the car when it was destroyed. When asked what happened to her vehicle, Mitchell responded, "It got totaled." The Commonwealth also offered three photographs documenting extensive damage to the Camry. Because the record contains no affirmative evidence to show that the value of the Camry was less than $1,000, it does not affirmatively show a miscarriage of justice, and the ends of justice exception does not apply.

On brief, appellant attempts to compare this case to our decision in Crowder v. Commonwealth, 41 Va. App. 658, 588 S.E.2d 384 (2003), in which the witness similarly did not express an opinion on value. Appellant is correct that we held the appellant in Crowder did not impliedly accept the dollar value mentioned by the prosecutor. In Crowder, however, we found that the appellant had "properly preserved this issue for appeal." Id. at 665 n.6, 588 S.E.2d at 388 n.6. That distinction sets Crowder apart from the case at hand, in which appellant failed to raise any objection concerning the value of the Camry before the trial court.

For the above reasons, we reject appellant's "ends of justice" arguments on the questions of the Camry's value and his intent to destroy it.

Affirmed.