UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Petty and Chafin
Argued at Norfolk, Virginia


ANDARION LORENZO McINNIS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1934-17-1                      JUDGE WILLIAM G. PETTY
                                                    DECEMBER 4, 2018

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Steven A. Mirman (Mirman Law Firm, PLLC, on briefs), for
appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


A jury convicted Andarion Lorenzo McInnis of use of a firearm in the commission of a

murder, use of a firearm in the commission of a robbery, robbery, and conspiracy to commit a

robbery.[1]  On appeal, McInnis argues that the "trial court erred in permitting the Commonwealth

to present evidence of Facebook posts allegedly made by [him], during the Sentencing Phase of

the proceedings, in violation of Va. Code [§] 19.2-295.1, because said posts were highly

prejudicial and irrelevant to the issue of sentencing."  For the reasons stated below, we affirm the

judgment of the trial court.

BACKGROUND

"On appeal, we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom."  Wells v. Commonwealth, 65

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The jury found McInnis not guilty of murder in the first degree.

Va. App. 722, 725, 781 S.E.2d 362, 364 (2016) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

McInnis and Jacquan Wilson arranged to meet the victim in order to buy Xanax from him. McInnis and Wilson approached the victim and his friend, who were waiting in their car. McInnis leaned into the driver's side window and put his hands on the window sill. Wilson got into the back seat of the car. The victim was in the front passenger seat counting pills when McInnis nodded to Wilson, who pointed a revolver at the victim. When the victim would not give Wilson the bag of pills, McInnis said, "Pop him." Wilson shot the victim, ripped the bag of pills from his hands, and fled with McInnis. The victim died as a result of the gunshot wound.

A jury found McInnis guilty of robbery, conspiracy to commit robbery, use of a firearm in the commission of a robbery, and use of a firearm in the commission of a murder. Prior to the sentencing phase of trial, the court held a bench conference off the record. After the conference, the following exchange was recorded:

> Trial Court: Okay . . . . There were some requests for [sic] regarding introduction of information on a Facebook page which I approved --
>
> Commonwealth Attorney: Yes, ma'am.
>
> Trial Court: -- if you want to say anything other than that, over the defense's objection, which I will note your objection . . . .
>
> Commonwealth Attorney: Thank you, Your Honor.
>
> Trial Court: So do we need to say anything else?
>
> Commonwealth Attorney: No, Your Honor.

The Commonwealth then introduced Facebook posts made by McInnis under the name "Left Field James." In these posts, made the day after the robbery and murder of the victim, McInnis stated that he had Xanax pills for sale. The jury returned a sentence of ten years for conspiracy to commit a robbery, thirty years for robbery, three years for use of a firearm in the commission

- 2 -

of a robbery, and five years for use of a firearm in the commission of a murder. At sentencing before the trial court two months later, defense noted that in reviewing the jury trial order, his objection to the posts was not noted. Therefore, defense stated his objections for the record and asked that they be memorialized in an order. The trial court agreed with the accuracy of defense's proffer and entered an order memorializing the objections.[2] The objection order states the following arguments in support of defense's objection to the Facebook posts:

4. Defendant Objected to introduction of this testimony on the following grounds:

   a. Testimony was irrelevant to the issue of sentencing.

   b. That testimony was more prejudicial than probative.

   c. There was no evidence that Zanax [sic] advertised in the Facebook Posts came from the robbery of [the victim].

The trial court imposed the sentences set by the jury, but suspended five years on the conspiracy to commit robbery conviction and fifteen years on the robbery conviction. This appeal followed.

ANALYSIS

On appeal, McInnis argues that the trial court erred in "permitting the Commonwealth to present evidence of Facebook posts allegedly made by [him], during the Sentencing Phase of the proceedings, in violation of Va. Code [§] 19.2-295.1, because said posts were highly prejudicial and irrelevant to the issue of sentencing."

At the outset we note that the objection McInnis actually made at trial was two-fold. First, he claimed that the evidence was irrelevant. Second, he claimed that it was more

---

[2] Because the actual objections made by McInnis at the bench conference were not transcribed, we do not know what argument he made in support of the objections. At oral argument, however, he conceded that the argument related solely to the objections noted in the order and did not include any reference to Code § 19.2-295.1.

prejudicial than probative.  We will begin our analysis with those objections as memorialized in the trial court's order.

## 1. Relevancy

Virginia Rule of Evidence 2:401 defines relevant evidence as "evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence."  Rule 2:402(a) declares that "[a]ll relevant evidence is admissible, except as otherwise provided by . . . statute.  Evidence that is not relevant is not admissible."  Thus, our first task is to determine if the offered evidence was relevant for purposes of sentencing.

"The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'"  Commonwealth v. Proffitt, 292 Va. 626, 634, 792 S.E.2d 3, 6-7 (2016) (quoting Virginia Elec. & Power Co. v. Dungee, 258 Va. 235, 260, 520 S.E.2d 164, 179 (1999)).  Additionally,

> "[w]hile evidence may be relevant in that it tends to establish the proposition for which it was offered, in order to be admissible, it must also be material . . . ."  Brugh v. Jones, 265 Va. 136, 139, 574 S.E.2d 282, 284 (2003).  To be material, "the evidence [must] tend[] to prove a matter that is properly at issue in the case."  Id.  Indeed, this materiality requirement is built into Rule 2:401's language, which states that the evidence must be probative of a "fact in issue."  "Strictly speaking, therefore, *evidence must be both relevant and material to be admissible, and it is inadmissible if it fails to satisfy either of these criteria*."  [Charles E.] Friend & [Kent] Sinclair, [The Law of Evidence in Virginia] § 6-1, at 342 [(7th ed. 2012)] (citations omitted).

Id. at 634-35, 792 S.E.2d at 7 (second and third alterations in original) (emphasis added).

> [B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the

- 4 -

kind and extent of punishment to be imposed within limits fixed by
law.

Harvey v. Commonwealth, 65 Va. App. 280, 283-84, 777 S.E.2d 231, 233 (2015) (quoting

McClain v. Commonwealth, 189 Va. 847, 859-60, 55 S.E.2d 49, 55 (1949)).[3] Additionally,

"[t]he scope of testimony in the sentencing phase is wide, and the standard for exclusion of

relevant evidence is whether the prejudicial effect substantially outweighs its probative value.

This is a matter of discretion for the circuit court and is properly reviewed under an abuse of

discretion standard." Prieto v. Commonwealth, 283 Va. 149, 168, 721 S.E.2d 484, 496 (2012).

> Where a course of criminal conduct is continuous and interwoven,
> consisting of a series of related crimes, the perpetrator has no right
> to have the evidence "sanitized" so as to deny the [factfinder]
> knowledge of all but the immediate crime for which he is on trial.
> The fact-finder is entitled to all of the relevant and connected facts,
> including those which followed the commission of the crime on
> trial, as well as those which preceded it; even though they may
> show the defendant guilty of other offenses.

Baldwin v. Commonwealth, 69 Va. App. 75, 84, 815 S.E.2d 809, 813 (2018) (quoting Currier v.

Commonwealth, 65 Va. App. 605, 615, 779 S.E.2d 834, 838-39 (2015)).

> Moreover, "[t]he court must take into account a wide range of
> information, including the defendant's remorse or lack thereof, in
> determining 'a sentence that best effectuates the criminal justice
> system's goals of deterrence (general and specific), incapacitation,
> retribution and rehabilitation.'" "Consideration of a defendant's
> attitude 'plays an important role in the court's determination of the
> rehabilitative potential [and future dangerousness] of the
> defendant.'" Thus, "the circumstances of the individual case will

---

[3] We recognize that the issue of what is relevant to sentencing is most often discussed in
the context of sentencing by the trial court. However, we see no principled reason why the
relevancy of evidence, as opposed to its admissibility, should be governed by different principles
in a jury trial. Thus, in a capital prosecution tried by a jury, "evidence may be presented as to
any matter which the court deems relevant to sentence . . . ." Code § 19.2-264.4(B); see also
Code § 19.2-295.1 ("In cases of trial by jury, . . . the defendant may introduce relevant,
admissible evidence related to punishment.").

> dictate what evidence will be necessary and relevant, and from what sources it may be drawn."

Id. at 83-84, 815 S.E.2d at 815 (alterations in original) (citations omitted).

Applying these standards, we cannot say that the trial court erred in concluding the evidence was relevant. It clearly provided circumstantial evidence of McInnis's involvement with illegal drugs and his lack of remorse for the crimes for which he had been convicted. The Facebook posts allowed the jury to infer that the victim was killed and robbed merely for pecuniary gain. Additionally, evidence that McInnis was selling drugs stolen from the victim was relevant and probative of him being a danger to society. It is certainly evidence which, if otherwise admissible, would "assist [a sentencing authority] in determining the kind and extent of punishment to be imposed within limits fixed by law." Harvey, 65 Va. App. at 283-84, 777 S.E.2d at 233.

### 2. Unfairly Prejudicial

Turning to McInnis's unfair prejudice argument, we note that while evidence may be relevant, however, it is inadmissible if "the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice . . . ." Va. R. Evid. 2:403(a). "The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court." Spencer v Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 617 (1990). When balancing these considerations, it is of course true that "all probative direct evidence generally has a prejudicial effect to the opposing party." Lee v. Spoden, 290 Va. 235, 251, 776 S.E.2d 798, 806 (2015). Thus, the relevant question is "whether the probative value of the evidence is substantially outweighed by its *unfair* or *unduly* prejudicial effects." Id. at 252, 776 S.E.2d at 807. "'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." Id. at 251, 776 S.E.2d at 807.

> The term "unfair prejudice" . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

Id. at 251-52, 776 S.E.2d at 807 (alterations omitted) (quoting Old Chief v. United States, 519 U.S. 172, 180 (1997) (construing the federal analogue to Rule 2:403)).

Furthermore, we cannot say that the trial court erred in concluding that the evidence was not unfairly prejudicial. We see nothing in the evidence that would inflame the passions of the jurors, particularly when compared with the brutality of the offense for which he was being sentenced. Simply put, the evidence does not "suggest" or "invite" any particular sentence. Id. at 251, 776 S.E.2d at 806.

### 3. Admissibility

Finally, we address McInnis's argument on appeal that the trial court erred in admitting the Facebook posts, "in violation of Va. Code [§] 19.2-295.1 . . . ." As we noted above, otherwise relevant evidence is not admissible if prohibited by statute. Va. R. Evid. 2:402(a). As McInnis correctly points out, in a non-capital prosecution, Code § 19.2-295.1 limits the evidence the Commonwealth may present at sentencing before a jury in its case-in-chief. Specifically, other than the defendant's prior criminal history, the only evidence permitted by the statute is victim impact testimony as defined by Code § 19.2-299.1.[4] See Code §§ 19.2-295.1 and 19.2-295.3. And, McInnis argues, the Facebook posts do not constitute victim impact evidence.

---

[4] Victim impact evidence consists of (i) the identity of the victim, (ii) "any economic loss suffered by the victim as a result of the offense," (iii) "the nature and extent of any physical or psychological injury suffered by the victim as a result of the offense," (iv) "any change in the victim's personal welfare, lifestyle or familial relationships as a result of the offense," (v) "any request for psychological or medical services initiated by the victim or the victim's family as a result of the offense," and (vi) any "other information as the court may require related to the impact of the offense upon the victim." Code § 19.2-299.1.

Whatever merit there might be to that argument, however, it was not an argument that was presented to the trial court. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Rule 5A:18; McDuffie v. Commonwealth, 49 Va. App. 170, 177, 638 S.E.2d 139, 142 (2006). "[A] litigant who opposes the admission of certain evidence has a duty to explain, contemporaneously, why he contends such evidence should be excluded in order to preserve and challenge that exclusion ruling on appeal." Creamer v. Commonwealth, 64 Va. App. 185, 195, 767 S.E.2d 226, 231 (2015). "The prevailing purpose behind this rule is 'to enable the trial court to prevent error, to cure alleged error with prompt and decisive instruction, and to prevent compounding any harmful consequences by dwelling on irrelevant matters.'" McDuffie, 49 Va. App. at 177, 638 S.E.2d at 142 (quoting Harward v. Commonwealth, 5 Va. App. 468, 473-74, 364 S.E.2d 511, 513 (1988)).

Although it is difficult to comprehend how the Facebook posts were permissible victim impact testimony pursuant to Code § 19.2-295.1, McInnis did not present that argument to the trial court. His objection was limited to relevancy and prejudice. In failing to raise Code § 19.2-295.1, he prevented the trial court from timely consideration of the objection and a proper ruling on its merits. This is precisely the harm that Rule 5A:18 was designed to prevent. Furthermore, McInnis does not invoke the good cause or ends of justice exceptions to Rule 5A:18 and the Court will not apply the exceptions *sua sponte*. Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*). Accordingly, Rule 5A:18 bars this Court from considering whether the testimony was admitted in violation of Code § 19.2-295.1.

CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.