COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Huff and Malveaux

AMJAD EMAN

                                                   MEMORANDUM OPINION* BY

v.      Record No. 1102-21-4      JUDGE MARY BENNETT MALVEAUX
                                                         JUNE 7, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Kathleen M. Uston, Judge

(Patrick L. Edwards, on brief), for appellant.  Appellant submitting
on brief.

(Robert Strange, Assistant Commonwealth's Attorney, on brief), for
appellee.  Appellee submitting on brief.

Pursuant to Code § 19.2-124, Amjad Eman ("appellant") appeals the circuit court's order

denying his motion to be admitted to pretrial bail.  For the following reasons, we affirm.

I.  BACKGROUND

On June 10, 2021, a grand jury indicted appellant on one count of conspiracy to

participate in racketeering activity, in violation of Code §§ 18.2-513 and -514(C), (D); one count

of possession with intent to distribute more than one ounce, but less than five pounds, of

marijuana, in violation of Code § 18.2-248.1(a)(2); and one count of possession of a firearm

while possessing with intent to distribute marijuana, in violation of Code § 18.2-308.4(C).

On July 14, 2021, the Commonwealth filed a motion for joinder and a memorandum in

support of that motion.  The Commonwealth moved the court to try appellant together with

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

seventeen other defendants, all of whom were charged with conspiracy to participate in racketeering activity.

On September 10, 2021, appellant filed a motion for bail. The Commonwealth opposed the motion and proffered the following information.[1] The Commonwealth alleged that all eighteen individuals conspired to participate in racketeering activity as part of a drug trafficking organization. The Commonwealth asserted that this drug trafficking organization was responsible for the November 7, 2020 murder of Yousef Omar, along with the interstate transportation of hundreds of pounds of marijuana.

Police began investigating the drug trafficking organization after Omar's murder, which occurred in the Newport Village apartment complex on West Braddock Road in Alexandria. Text messages from Omar's phone indicated that he owed money to Ahmed Shareef, one of the defendants, for drugs. Text messages recovered from other defendants' phones showed that some of the defendants discussed Omar's return to the Washington, D.C. area the week prior to his killing. The day of the killing, one of the defendants sent a text message to Omar stating "4827 w braddock rd," and Omar responded, "On my way." This text conversation occurred about four hours before Omar was found murdered in the Newport Village parking lot. Shareef was treated for a gunshot wound about thirty minutes after the killing and used a false name and date of birth while at the hospital.

Based upon evidence found during the murder investigation, police started to investigate the drug trafficking organization. The Commonwealth detailed its evidence of drug trafficking among the eighteen defendants, alleging that the defendants used commercial airlines to transport large amounts of money to California and Washington State to purchase multiple

---

[1] The Commonwealth made its proffers both in its memorandum in support of its motion for joinder and at the bail hearing.

pound quantities of marijuana to be transported back to Northern Virginia for further distribution. The Commonwealth noted that

> [t]o date, law enforcement ha[d] seized at least 23 firearms including three assault rifles and multiple high-capacity magazines, at least $274,795 in United States currency, more than 150 pounds of marijuana, worth an estimated $500,000 in value, cocaine and other controlled substances, electronic money counting machines, digital scales, vacuum sealers, packaging materials, suitcases, owe sheets, numerous cell phones and electronic devices, multiple fictitious driver's licenses, and multiple vehicles used in furtherance of the . . . racketeering activity.

As part of the expanded investigation, police executed search warrants in multiple locations on December 8, 2020. Police searched 4767 W. Braddock Road, #101, an apartment located in the Newport Village apartment complex where Omar was killed. The apartment was leased by Eman Eman, appellant's brother. Eman Eman and appellant were both at the apartment during the search. During the search, police found $6,954 in cash, two firearms, approximately one-and-a-half pounds of marijuana, a vacuum sealer, digital scales, multiple cell phones, and mail addressed to appellant. A police report from the search lists Eman Eman as the owner of a Smith & Wesson pistol found in the apartment and lists appellant as the owner of a Glock handgun found in the home.[2]

Police also examined the contents of appellant's cell phone, which the Commonwealth alleged "showed that he was . . . significantly involved in the [organization's] racketeering activity . . . early in the conspiracy" with certain defendants. The Commonwealth proffered that appellant transported large quantities of marijuana "as a courier . . . as well as being a distributor." In addition, the phone records showed that Shareef sent appellant information about

---

[2] The Glock handgun was found on the top of a dresser in Eman Eman's bedroom, and the Smith & Wesson pistol was found under a sofa in the living room.

how the United States Drug Enforcement Agency ("DEA") targeted individuals for cash seizures in airports.

The Commonwealth further proffered that on the day of Omar's murder, at 12:00 p.m., appellant was in communication with Mohammed al Gouda, another defendant, who was "alleged to play a role in participation of the homicide." Later that same day, between 10:00 p.m. and 11:00 p.m., appellant was in communication via text message with an unknown individual, and the Commonwealth asserted that "based upon the context of that conversation, it appears that that individual is advising [appellant] to dispose of something relating to the homicide." The text messages, introduced by the Commonwealth at the bail hearing, show an individual texting appellant, "Make sure that bih get thrown out," with appellant replying "Already bruh."

The Commonwealth further proffered that appellant continued to be involved in drug trafficking after the murder. When he was arrested, appellant was at the residence of Mohammed Ahmed, another defendant, and police recovered approximately a pound of marijuana from that home.

In addition to the text messages from appellant's cell phone, the Commonwealth introduced an exhibit showing images recovered from the phone. Those images consisted of: (1) a picture of appellant pointing a firearm at the camera; (2) an image showing the information sent by Shareef about how the DEA targets individuals for cash seizures; and (3) a photograph of a suitcase and an airplane luggage tag with appellant's name on it.

In response, counsel for appellant argued that appellant's release would not constitute an unreasonable risk to the public or risk of flight. Regarding the danger to the public, counsel for appellant asserted that appellant was only "at the courier level" and not someone "that's calling

shots" in relation to Omar's murder. Counsel noted there was no evidence that appellant was involved in the murder although he "may have been aware of it by circumstance."[3]

Regarding the risk of flight, counsel argued that appellant was motivated to appear for trial because the Commonwealth lacked evidence for the charges appellant faced. Referring to the distribution of marijuana and possessing a firearm while possessing marijuana with the intent to distribute charges, counsel for appellant noted that the police report from the search of the apartment indicated that both bags of marijuana found in the residence belonged to Eman Eman and not appellant.[4] Appellant had also lived "in the area his entire life, and ha[d] a great deal of support from the community," including his girlfriend and other friends, and would be able to live with his parents if admitted to bail.

After hearing argument, the circuit court denied appellant's motion for bail. The court explained its ruling by stating that

> [i]n making the determination as to whether or not to admit you, [appellant] to bail, the court is constrained to require by statute several things. Those things are the nature, and circumstances of the offense, in this instance, the evidence that was presented to the court today indicates that on the day of the raid you were there present.
>
> And that at that time there [were] both not only firearms present, but large amounts of cash, as well as a large amount of drugs present in the apartment, and that at that time your brother made a statement that at least one of those firearms belonged to you. Whether, or not it did, or not, we don't know that, that will come up at a later point of course. But for purposes of this proceeding, that is the information that the court has in front of it.

---

[3] Counsel for appellant also asserted that if appellant was released, appellant would not go back to selling drugs because "you're allowed to have drugs now." In response, the Commonwealth noted that "[a]ll the conduct charged in this case remains illegal today. The only thing that has been decriminalized is the possession of up to an ounce of marijuana, that's it."

[4] The police report stated that a plastic bag containing 263.1 grams of suspected marijuana and a vacuum-sealed bag containing 423.5 grams of suspected marijuana were found under the bed in Eman Eman's bedroom.

And that of course goes to the weight of the evidence of the underlying crimes as well. The court understands your counsel's argument, and is very well taken. However, at this stage, the court is not comfortable releasing you to bail, to bond, or granting bond in this case. And will therefore deny the motion.

[F]or the reasons stated by the court based upon the information received, and the exhibits presented by the Commonwealth, the court is going to deny the motion at this time.

This appeal followed.

## II. ANALYSIS

On appeal, appellant argues that the circuit court abused its discretion in finding that he posed an unreasonable danger to himself, his family or household members, or the public if released on bail.[5]

---

[5] Appellant also challenges the admission of the text messages and images recovered from his cell phone on the basis that the exhibits were irrelevant, lacked foundation, and were highly prejudicial. However, a review of the record demonstrates that appellant failed to preserve these arguments for appeal. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.").

During the bail hearing, counsel for appellant objected to the admission of the text messages on the basis that they "could be very misleading in the absence of context . . . ." The court overruled the objection, and then asked counsel, "Do you have objections to any of the [images]," to which counsel replied, "Your Honor, I'll withdraw my same objection to the other exhibits, I understand you'll probably overrule them."

By withdrawing his objection to the admission of the images, appellant failed to alert the circuit court to any alleged error, and thus our review of the admission of this exhibit is foreclosed by Rule 5A:18. *See Neal v. Commonwealth*, 15 Va. App. 416, 422 (1992) (noting that a defendant must "alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials" (quoting *Martin v. Commonwealth*, 13 Va. App. 524, 530 (1992))).

As for the text messages, while appellant now challenges the admission of this exhibit as irrelevant, lacking foundation, and prejudicial, at the bail hearing appellant only objected to their admission on the basis that they could be "misleading." "In order to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'" *McDuffie v. Commonwealth*, 49 Va. App. 170, 177 (2006) (quoting *Marlowe v. Commonwealth*, 2 Va. App. 619, 621 (1986)). Appellant simply did not object to the admission of the text messages on the grounds that he now raises on appeal, and therefore we decline to consider appellant's argument.

"On appeal, we review the circuit court's decision whether to grant bail for abuse of judicial discretion." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021); *see also* Rule 5A:2(b) ("An order setting or denying bail or setting terms of a bond or recognizance shall be reviewable for abuse of discretion."). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because the reviewing court would have come to a [different] result in the first instance." *Barnes v. Commonwealth*, 72 Va. App. 160, 166 (2020) (alterations in original) (quoting *Commonwealth v. Duse*, 295 Va. 1, 7 (2018)).

> The Supreme Court has identified three ways in which a trial court abuses its discretion: when (1) it fails to consider a relevant factor that should have been given significant weight; (2) it considers and gives significant weight to an irrelevant or improper factor; or (3) it considers all proper factors, and no improper ones, but, in weighing those factors, the court commits a clear error in judgment.

*Id.* at 167. "A court always abuses its discretion when it makes an error of law." *Thomas*, 73 Va. App. at 127.

Code § 19.2-120(A) provides that a person charged with a criminal offense "shall be admitted to bail" unless the judicial officer determines there is probable cause to believe that the accused "will not appear for trial or hearing or at such other time and place as may be directed" or "[h]is liberty will constitute an unreasonable danger to himself, family or household members as defined in [Code] § 16.1-228, or the public." Code § 19.2-120(B) further provides that

> [i]n making a determination under subsection A, the judicial officer shall consider all relevant information, including (i) the nature and circumstances of the offense; (ii) whether a firearm is alleged to have been used in the commission of the offense; (iii) the weight of the evidence; (iv) the history of the accused or juvenile, including his family ties or involvement in employment, education, or medical, mental health, or substance abuse treatment; (v) his length of residence in, or other ties to, the community; (vi) his record of convictions; (vii) his appearance at court proceedings or flight to avoid prosecution or convictions for failure

- 7 -

to appear at court proceedings; and (viii) whether the person is likely to obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness, juror, victim, or family or household member as defined in [Code] § 16.1-228.

Code § 19.2-120(A) establishes a presumption in favor of admission to bail, unless the court finds probable cause that the defendant will not appear for trial or that the defendant's release would constitute an unreasonable danger to himself, family or household members, or the public. *See Keene v. Commonwealth*, 74 Va. App. 547, 552 (2022). In determining whether such probable cause exists, a court must consider the factors provided in Code § 19.2-120(B).

Our review of the record indicates that there was significant support for the circuit court's determination that the presumption in favor of bail was rebutted by the Commonwealth. Therefore, we reject appellant's argument and hold that the circuit court did not abuse its discretion in denying his motion for bail.

Here, appellant was charged with racketeering activity, possession with intent to distribute more than one ounce but less than five pounds of marijuana, and possession of a firearm while possessing with intent to distribute marijuana. The circuit court heard details of the underlying circumstances of the offenses, namely appellant's involvement in a large-scale drug trafficking conspiracy.[6] *See* Code § 19.2-120(B)(i) (requiring the court to consider the nature and circumstances of the offenses). Appellant's role in this organization was as a courier of drugs, transporting the marijuana from western states to Northern Virginia for distribution. Appellant also participated in the organization as a distributor of the marijuana. The Commonwealth alleged that the drug trafficking organization was responsible for the death of

---

[6] As noted above, the Commonwealth detailed the extensive amount of drug distribution carried out by the drug trafficking organization. Police had seized more than 150 pounds of marijuana, over twenty firearms, other controlled substances, and items used in the distribution of drugs during their investigation of the organization's activities.

Yousef Omar. While there was no direct evidence that appellant was involved in the murder, on the day of Omar's death, appellant was in communication with one of the other defendants allegedly involved in the murder. In addition, appellant sent and received text messages hours after Omar's death that discussed throwing something away. Following Omar's death, appellant did not cease to participate in the drug trafficking organization's activities, but instead was arrested while at another defendant's home where police found approximately a pound of marijuana.

Further, a firearm belonging to appellant was found in the apartment he shared with his brother, along with considerable other evidence of drug distribution. *See* Code § 19.2-120(B)(ii) (requiring the court to consider whether a firearm was alleged to have been used in the commission of the offense). Police also found a photograph on appellant's cell phone of appellant pointing a gun at the camera.

Nevertheless, appellant argues on appeal that we should not focus on these factors and instead contends that the circuit court erred in failing to consider other relevant factors. Appellant asserts that the court did not give weight to the fact that the police report from the search indicated that the cash and drugs belonged to appellant's brother, with only one firearm attributed to appellant. However, in this case, the Commonwealth's proffers not only included the evidence of drug distribution found in Eman Eman's apartment, but also included the information that appellant had been significantly involved as a courier for the drug trafficking organization soon after its formation. Appellant further argues that the Commonwealth's proffers only established that he was a courier of drugs and that the offenses he was charged with were all drug charges that were non-violent in nature. This argument is also unpersuasive when viewed in the light of all the information presented to the circuit court. While the information indicated that appellant was a courier of drugs and did not directly participate in Omar's killing,

appellant also had a firearm at his brother's apartment and was pictured holding a firearm that he was pointing at a camera. Thus, the circuit court could view the combination of drug distribution and firearm possession as factors indicating that appellant's release would constitute an unreasonable danger to the public. *See Commonwealth v. Smith*, 281 Va. 582, 593 (2011) (recognizing that drug distribution offenses are "closely associated with firearms due to the danger inherent in the drug trade").

Contrary to appellant's argument, a review of the entire record demonstrates that the circuit court's decision to deny appellant's motion for bail had factual support in the record. The serious and ongoing nature of appellant's offenses, which were committed with a firearm and along with other individuals as part of a large-scale drug trafficking organization, provided the circuit court with probable cause to believe that appellant's liberty would constitute an unreasonable danger to the public. Thus, we reject appellant's argument that the evidence favored his admission to bail.

## III. CONCLUSION

For the foregoing reasons, we conclude that the circuit court's decision to deny bail was supported by the record, and thus the court did not abuse its discretion by denying appellant's motion for bail.

*Affirmed.*