# COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Causey and Bernhard
Argued at Norfolk, Virginia

THOMAS WARREN

v.      Record No. 0611-23-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE JUNIUS P. FULTON, III
JUNE 17, 2025

FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
L. Wayne Farmer, Judge

L. Calum Welch (Welch & Wright, PLLC, on brief), for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General; Jessica M. Bradley, Assistant Attorney General,
on brief), for appellee.

Thomas Warren entered pleas of guilty to his charges of malicious wounding and child

cruelty. Upon his pleas, after a sentencing hearing, he was sentenced to 25 years in prison, with

15 years suspended. Seeking to have the trial court's sentencing order vacated, Warren contends

that in fashioning his sentence, the trial court considered inadmissible evidence of a prior bad act

between himself and the victim, and that it erred by applying a ten-year term of suspension to his

sentence for child cruelty which only carries a maximum five-year sentence. Warren

acknowledges that he failed to preserve both assignments of error but asks that we consider them

under the ends of justice exception to Rule 5A:18. We find that the issues raised by Warren on

appeal are waived and that the ends of justice exception does not apply. Thus, we affirm.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

# BACKGROUND

Warren pled guilty in the trial court on June 7, 2022, to malicious wounding and child cruelty. The trial court first engaged Warren in a colloquy to ensure the voluntariness of his pleas and then asked for a "brief summary" of the Commonwealth's evidence had the matter gone to trial. The Commonwealth proffered the following:

On June 26, 2021, J.W. and Warren were at home with their three children.[1] That evening, J.W. became concerned that Warren was using drugs when she found copper screening in the bathroom. J.W. confronted Warren and the two argued. Warren then went outside and angrily returned with a knife. J.W. "got a tap on the shoulder" and the next thing she knew Warren grabbed her and put the knife to her neck. He told her to go upstairs and threatened to kill the children. As the two began fighting, Warren injured J.W.'s neck and cut her finger "very deeply." J.W. and Warren scuffled throughout the residence, leaving blood on the couch, the wall, and the floor, while their eight-year-old child awoke and ran to a nearby relative's house to seek help. The middle child, only five years old, also woke up and sat on the stairs. Warren went to that child and pushed him down the steps, resulting in abrasions on the child's left arm and elbow. J.W. later went to the hospital, where she received stitches in her finger and treatment for the injuries to her neck.

Upon his arrest, Warren told police he was struggling with a crack cocaine addiction. He did not remember the argument with J.W. because he had smoked crack cocaine at the time. He admitted using a hunting or a fishing knife, but he did not remember how the argument started. He agreed that J.W. would have no reason to lie about the altercation and reiterated that he did not remember making any threats or the fight that occurred between himself and J.W.

---

[1] J.W. and Warren had two children in common, and J.W. had a child from a separate relationship. The children were ages eight, five, and four.

The trial court found that Warren's guilty pleas were made knowingly, voluntarily, and intelligently, and accepted them. The court then ordered a presentence investigation report (PSR) and scheduled the matter for sentencing.

At the sentencing hearing, the trial court admitted the PSR and the sentencing guidelines,[2] and then took testimony from J.W. J.W. told the court that she did not want Warren to be released "any time soon," that she was afraid to have physical contact with him, and that she was a victim of prior incidents of domestic violence committed by Warren. The Commonwealth then inquired about Warren's 2016 convictions for unlawful wounding and maliciously shooting at an occupied dwelling. The prosecutor asked J.W. if she was present during that incident and she said, "yes." J.W. also confirmed that she was one of the victims and that during the incident, Warren struck "a stepfather" in the face with a weapon and then fired the gun into the house. J.W. confirmed that "a lot of offenses" from that altercation were dismissed. She explained that in 2016 she was still supportive of Warren and that she had asked for a lenient sentence for his crimes.

J.W. also confirmed she was the victim of the 2019 domestic assault and battery conviction which was the subject of Warren's probation violation.[3] During *that* incident, Warren threw an object at her, striking her in the face. In 2020, J.W. was also the victim in the destruction of property case which resulted in Warren's misdemeanor conviction. Thus, after the instant offenses occurred in 2021, she no longer wanted any further contact with Warren.

During closing arguments, Warren's counsel objected to any consideration the trial court might give to the charges that were dismissed in 2016. He argued that "I understand that she

---

[2] The guidelines recommended a range of punishment of 3 years, 11 months at the low end and 8 years, 9 months at the high end.

[3] Warren was simultaneously sentenced on a probation violation for an unrelated misdemeanor offense, but that matter is not part of this appeal.

lived with him and she can give you a little view of their past history, but Judge, you can't go behind . . . these acquittals. These cases were dismissed." The Commonwealth argued in response that J.W.'s testimony was "not to highlight the charges that were dismissed, [but] the fact that [Warren] was found guilty of those [other offenses] and it's the same victim." The Commonwealth continued, "[i]t's to highlight to the Court that we have the same victim." "[W]e have the same victim for the domestic assault and battery that happened afterwards." "[W]e have the same victim of destruction of property that happened after that. And we have the same victim today on this malicious wounding[.]"

During allocution, Warren said he was "truly sorry" and that he "had no intentions to hurt anybody." He also clarified that he "didn't push [his] son down the stairs." He "accidentally bumped into [the child] and he fell down the steps."

Before sentencing, the court remarked, "[w]ell, Mr. Warren, for better or worse, I'm the judge sitting here sentencing you. I can't unknow what I know and I know you will recall I'm the judge that sentenced you on the [2016 offenses]." Warren responded, "yes, sir." The court continued:

> So I had an opportunity -- it's my habit when I sentence somebody to go back and look at what they pled guilty to and why they pled guilty to that and that involved you not letting this same lady leave the house. That involves you getting a firearm, a long gun, and hitting someone in the face with it multiple times. That involved your children being in the home, having to flee from the home again because either their father or their stepfather or whatever you are to them for each different child and once again behaved in a way that put them at great risk. That's what happened.
>
> And now we fast forward what, eight years later, it's 2023. Now, that was in 2016, so probably six years after that and in the intervening times -- again, not that you were charged and we can all get into why people get charged. Again, Mr. Matthews makes his point well. I'm not to consider those things; right? You were found not guilty, but that's not true of all of those. You were found guilty of another assault and battery on this same lady. You were, at a different occasion, charged with assault and battery and

- 4 -

found guilty of destroying her property. You were found guilty of unauthorized use. I have no idea whose vehicle that was and now we're back and you put a knife to her neck and cut her. I didn't mean to hurt anybody. I'm not sure exactly what you meant to do if you put a knife to her neck. Her fingers are cut. I'm sure that's defensive, trying desperately to not get her throat cut.

The trial court stated that it had no idea why J.W. would keep returning to the relationship after Warren's crimes against her but gave "kudos" to her "for finally having the wherewithal to stand up and say 'enough is enough. I will not die for you and my children will not die for you.'" The court found that "this has escalated[,] and I am confident that if we weren't standing here today[,] at some point it ends with somebody dead." Warren did not object to any of these comments, or to any of J.W.'s testimony.

The trial court sentenced Warren to 20 years of incarceration with 10 years suspended for malicious wounding and to 5 years in prison with 5 years suspended for child cruelty. The trial court imposed a ten-day sentence for his probation violation. The sentencing order specified that the five-year sentence on the child cruelty conviction was suspended "for a period of 10 years." The trial court explained that it refrained from imposing a higher sentence "because [Warren] entered a plea of guilty and didn't require anybody to testify. But for a knife applied a little bit harder that night [Warren would] be here on more serious charges and malicious wounding is pretty serious." Warren appeals.

ANALYSIS

I. The Trial Court's Consideration of Warren's 2016 Convictions

Warren first argues that the trial court impermissibly conducted its own investigation into the facts underlying his 2016 convictions for unlawful wounding and shooting into an occupied dwelling.[4]

Warren complains that the trial court "expressed specific concerns" about the 2016 incident that were not testified to by J.W. in this case or otherwise described in the PSR.[5] He reasons that because the trial court did not elaborate on the type of information it had reviewed, when it reviewed that information, whether it was "vetted for reliability," and whether Warren ever had an opportunity to challenge its reliability, the court "robbed [him] of the ability to challenge whatever information the court did review, thus committing a clear, substantial, and material error." Warren concedes he did not preserve these arguments for appeal but asks that we apply the ends of justice exception to his waiver. For the following reasons we decline to do so.

"No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefore at the time of the ruling . . . ." Rule 5A:18. "In order

---

[4] A judge should not . . . conduct independent investigations into other offenses, as this could prejudice the accused. *Snarr v. Commonwealth*, 131 Va. 814, 826 (1921). Furthermore, the Canons of Judicial Conduct for the State of Virginia explicitly state that "a judge must not independently investigate facts in a case" and "is entitled to consider only the evidence presented." Va. Sup. Ct. R. pt. 6, § III, Canon 1(L). While this Court cannot determine from the record to what extent the trial court might have done so regarding Warren's 2016 offenses, we need not address it because the record as a whole does not establish the trial court conducted any independent investigation.

[5] Among those concerns were that Warren did not let J.W. leave the house during the 2016 incident, that he used a long gun to hit "someone" in the face with it "multiple times," that her children were at home during the incident, and that the children "had to flee the home," which again put them at great risk. J.W. did not testify to these facts at the sentencing hearing in the instant case, and they were not listed in the PSR. Thus, it appears that the trial court judge either remembered them because he was the sentencing judge in the 2016 case, or because he consulted the court's files.

to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'" *McDuffie v. Commonwealth*, 49 Va. App. 170, 177 (2006) (quoting *Marlowe v. Commonwealth*, 2 Va. App. 619, 621 (1986)). "The prevailing purpose behind this rule is 'to enable the trial court to prevent error, to cure alleged error with prompt and decisive instruction, and to prevent compounding any harmful consequences by dwelling on irrelevant matters.'" *Id.* (quoting *Harward v. Commonwealth*, 5 Va. App. 468, 474 (1988)). Thus, as a general rule, "[i]f a party fails to timely and specifically object, he waives his argument on appeal." *Brittle v. Commonwealth*, 54 Va. App. 505, 512 (2009).

"Rule 5A:18 also provides, however, that issues not preserved may still be considered on appeal where 'good cause [is] shown or to enable the Court of Appeals to attain the ends of justice.'" *McDuffie*, 49 Va. App. at 177 (alteration in original) (quoting Rule 5A:18). "This 'ends of justice' exception may be invoked only where a 'miscarriage of justice' would otherwise result." *Id.* at 177-78. Indeed, "[t]he 'ends of justice' exception . . . is 'narrow and is to be used sparingly.'" *Brittle*, 54 Va. App. at 512 (alterations in original) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). The exception is only operative when the trial court erred and where the "application of the exception is necessary to avoid a grave injustice or the denial of essential rights." *Rowe v. Commonwealth*, 277 Va. 495, 503 (2009) (quoting *Charles v. Commonwealth*, 270 Va. 14, 17 (2005)). The error must be "clear, substantial and material." *Bazemore v. Commonwealth*, 42 Va. App. 203, 219 (2004) (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Brittle*, 54 Va. App. at 514.

On this record, we find no grave injustice or the denial of essential rights. First, Warren has failed to establish that the trial court erred in the punishment. The trial court imposed a sentence of 20 years in prison for Warren's malicious wounding conviction and 5 years of incarceration for his

child cruelty conviction. Those sentences are within the range of punishment set by the legislature and thus are presumptively correct. *See* Code §§ 18.2-10(c), (f), 18.2-51, and 40.1-103. "We perceive no reason to invoke the 'ends of justice' exception" in cases where "[t]he sentence is not excessive on its face," *Jefferson v. Commonwealth*, 33 Va. App. 230, 239 (2000), *aff'd en banc*, 35 Va. App. 436 (2001), and we will not interfere with a sentence imposed by a trial court that is "within the range set by the legislature for the particular crime of which the defendant was convicted," *Fazili v. Commonwealth*, 71 Va. App. 239, 248 (2019) (quoting *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011)). That is, we will not disturb a court's sentencing decision "as long as it stays within" the range of punishment set by the legislature "and is not influenced by any mistake of law." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563-64 (2016) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). Because Warren's sentences were within the appropriate statutory range of punishment for malicious wounding and child cruelty, the ends of justice exception to Rule 5A:18 does not apply.

The record also does not show a miscarriage of justice. Contrary to Warren's assertion, the trial court expressly did not consider "acquitted conduct" in reviewing his criminal record. Instead, the trial court recalled that in 2016, Warren pleaded guilty to unlawful wounding and shooting into an occupied dwelling.[6] The court also recalled that the 2016 crimes involved the same victim, J.W., that Warren fired a gun into a dwelling occupied by J.W. and another person, and that the children were present during the altercation. The court considered Warren's criminal history, which included two prior felony convictions and nine misdemeanor convictions, specifically stating that it "[went] back and look[ed] at what Warren pled guilty to." "That involves you getting a firearm, a long gun, and hitting someone in the face with it multiple times." It noted the children were in the

---

[6] The judge who sentenced Warren for the offenses that are the subject of this appeal was the same judge who presided over Warren's 2016 offenses.

home on that earlier occasion and that they had to flee "because [Warren] once again behaved in a way that put them at great risk." The court also recited that Warren was "found guilty of another assault and battery on this same lady," "found guilty of destroying her property," and "found guilty of unauthorized use." According to J.W.'s testimony at the sentencing hearing, she was the victim of several of his past offenses: Warren firing at a building that J.W. occupied in 2016, she witnessed Warren's assault on the stepfather, he assaulted her again in 2019, and he broke her window in 2020. In the instant case, Warren put a knife to J.W.'s neck, cut her finger "very deeply," and threatened to kill their children, one of whom he pushed down the stairs that night.[7] After Warren's attack, J.W. needed stitches and emergency medical treatment. Thus, the trial court's comments were directed toward the violent history Warren and J.W. shared and not to any "acquitted conduct" that appeared on his criminal record.[8] The trial court's sentences were not unreasonable in view of the gravity of Warren's current crimes and his past criminal history.

Finally, the mere fact that the sentence exceeded the high end of the range of punishment recommended by Warren's sentencing guidelines does not compel a different result. Although the trial court must "review and consider the suitability of the applicable discretionary sentencing guidelines," Code § 19.2-298.01, it is well settled that the Virginia Criminal Sentencing Guidelines are "discretionary, rather than mandatory," *West v. Dir. of Dep't of Corr.*, 273 Va. 56, 65 (2007).

---

[7] The judge was not required to accept Warren's denial that he pushed his son down the stairs. Witness credibility is a matter for the trial court. Moreover, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

[8] The trial court commented, "[defense counsel] makes his point well. I'm not to consider those things, right? You were found not guilty, *but that's not true of all of those*." (Emphasis added).

In sum, because Warren has failed to show that the trial court erred in fashioning his sentence or that his sentence resulted in a grave injustice or denial of his essential rights, we will not apply the ends of justice exception to Warren's failure to preserve this assignment of error for appeal. The issue is waived.

## II. Code § 19.2-303.1

Warren also maintains that the trial court erred by imposing a ten-year period of suspension for the suspended sentence he received on his child cruelty conviction. He argues that under the plain language of Code § 19.2-303.1, the court could impose only a five-year period of suspension for that offense, which is a Class 6 felony. Warren again acknowledges that he did not raise this argument below but asks that we consider the matter under the ends of justice exception to Rule 5A:18. Because Warren's crimes occurred before the 2021 amendments to Code § 19.2-303.1, the current statutory scheme did not apply to Warren's sentencing, and under the plain wording of the statutory provision in place at the time of the offenses, a ten-year probationary term was lawful. We therefore find no manifest error in the sentencing decision that might suggest the ends of justice exception to Rule 5A:18 would apply.

At the time of Warren's offenses, Code § 19.2-303.1 provided,

> In any case where a court suspends the imposition or execution of a sentence, it may fix the period of suspension for a reasonable time, having due regard to the gravity of the offense, *without regard to the maximum period for which the defendant might have been sentenced* . . . .

(Emphasis added). The amended version of the statute, effective July 1, 2021, reads: "In any case where a court suspends the imposition or execution of a sentence, it may fix the period of suspension for up to the statutory maximum period *for which the defendant might originally have been sentenced to be imprisoned* . . . ." Code § 19.2-303.1. (Emphasis added).

- 10 -

"For criminal sentencing, courts should apply the penalty in existence at the time of the commission of the underlying offense." *Hannah v. Commonwealth*, 303 Va. 106, 122 (2024). Warren committed his offenses on June 26, 2021. On that day, the punishment applicable to Warren's crimes was contained within the previous version of Code § 19.2-303.1, which allowed the trial court to suspend Warren's sentences for "a reasonable time" and "without regard to the maximum period for which the defendant might have been sentenced." The amendments to that code section were enacted effective July 1, 2021, and are thus "presumed to operate prospectively, applying only to conduct occurring after that date." *Hannah*, 303 Va. at 122. Accordingly, "[b]ecause the penalty applied was the penalty in existence at the time of the offense[s], the judgment was of a character the court was able to render," we hold that the ten-year term of suspension the trial court applied to Warren's child cruelty sentence was lawful. *Id.* at 123.

This Court finds no manifest error or grave injustice in the ten-year term of suspension imposed on Warren for his child cruelty conviction, because the term of suspension was applicable at the time he committed the offenses. We therefore conclude that the ends of justice exception does not apply to his failure to preserve the issue for appeal.

CONCLUSION

For these reasons, the trial court's judgment is affirmed.

*Affirmed.*